```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

        -against-
                                        MEMORANDUM AND ORDER
IGNACIO SILVESTRE MORLA,                15-CR-332 (FB)

            Defendant.
---------------------------------------------------x
```

*Appearances:*
For the United States of America:          For the Defendant
ROBERT L. CAPERS                           JOHN L. RUSSO
United States Attorney                     31-19 Newtown Avenue
Eastern District of New York               Suite 500
BY: NOMI DANIELLE BERENSON                 Astoria, NY 11102
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Ignacio Silvestre Morla was indicted on a charge of bulk cash smuggling in violation of 31 U.S.C. § 5332(a). He moves to suppress certain statements he made to Customs and Border Protection ("CBP") officials at John F. Kennedy International Airport ("JFK Airport") prior to being read his *Miranda* rights. The government asserts that Morla was not "in custody" at the time the relevant statements were made, and therefore, *Miranda* does not apply. The Court disagrees. For the following reasons, Morla's motion to suppress is granted.

# I

The Court held an evidentiary hearing with respect to Morla's suppression motion. CBP Officer Frank Raio and Special Agent Brian Colica of the Department of Homeland Security testified. Morla submitted an affidavit as to the events on the day of his arrest. No facts material to Morla's suppression motion are in dispute. The Court makes the following finding of facts pursuant to Federal Rule of Criminal Procedure 12(d).

On June 26, 2015, Morla boarded a flight to the Dominican Republic at JFK Airport. Acting on information provided by other CBP officers, CBP Officer Raio and another officer boarded the flight prior to its departure. The officers instructed Morla to gather his belongings, "and that he would be coming off the aircraft into the jetway, and that [the officers] would be asking him a couple of questions."[1] Tr. 10.[2]

Once Morla and the officers were in the jetway, Officer Raio informed Morla "that he was allowed to carry as much money as he wanted out of the country, just that anything over $10,000 had to be reported on a form." Tr. 11. Officer Raio explained that the $10,000 reporting limit included currency Morla had on his person and in his checked baggage. Morla told the officers he had $6,000 in cash.

The officers then gave Morla a Spanish-language CBP-909 form, which "states

---

[1] Morla responded to the officers in Spanish. Accordingly, Officer Raio—who is fluent—communicated to Morla in Spanish.

[2] Citations to "Tr." refer to the transcript of the suppression hearing held on February 2, 2016.

everything that [Officer Raio] explained to [Morla] in writing." Tr. 13. Morla was given time to examine the form and Officer Raio advised him that it would be a violation of the law to inaccurately report the amount of money he was traveling with. Morla then declared $6,000 on the CBP-909 form and signed his named at the bottom. The officers asked Morla to present his currency for verification, and Morla presented approximately $6,300.

Officer Raio then received a phone call from CBP officers who had simultaneously inspected Morla's checked luggage. Those officers uncovered $370,830 in U.S. currency in Morla's checked bags.

The officers in the jetway then placed Morla in handcuffs. Officer Raio explained to Morla that he was being transported to a CBP office, and that the handcuffs were for his safety and the safety of the officers. It took approximately ten minutes to transport Morla to the CBP office. Once in the office, Morla's handcuffs were removed and he was directed to sit on a bench. The officers then cuffed Morla's left hand to the bench.

Officer Raio continued the examination in the CBP office, with two other CBP officers in the room. Officer Raio asked Morla about his employment: "First he said he was a janitor at a bar, then he said [he] was a janitor at a country club." Tr. 20. With respect to Morla's answers to other questions, Officer Raio testified:

> When we asked him when he booked his trip, he said a couple of days. When we asked him where, where the money came from because he's a janitor, he said that he found it on a street corner [179th] and St. Nicholas in a brown

paper bag. And as soon as he found the money, he booked his trip to the Dominican Republic.

Tr. 20. Officer Raio testified that these questions are the "[s]ame questions we ask anybody that we're going to be seizing money from." Tr. 21. After Officer Raio questioned Morla, another CBP officer in the room asked Morla the same questions. Officer Raio testified that another officer repeated the same questions because "[i]t was just a little odd that a janitor had $377,000 that he said he didn't have [, a]nd I just wanted to be sure that he understood and that I understood." Tr.21. The questioning of Morla in the CBP office lasted about fifteen minutes.

After the interview, the CBP officers notified Homeland Security Investigations ("HSI"). Special Agent Colica arrived, and he and a Spanish-speaking agent escorted Morla into another room where they informed him of his *Miranda* rights. The agents asked Morla if he would like to speak with them, but Morla asked for an attorney, and the questioning of Morla ceased. Morla was returned to the bench in the CBP office, where he sat for approximately three hours before Agent Colica brought him to an HSI office to be processed.[3]

## II

The Fifth Amendment protects individuals from being "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, the

---

[3] The record is unclear whether Morla was handcuffed to the bench in the time between being informed of his *Miranda* rights and being transported to the HSI office.

Supreme Court concluded that the right against self-incrimination applies during "in-custody interrogation of persons suspected or accused of crime" because such questioning "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966)). As a prophylactic against such pressures, the Court held that "the accused must be adequately and effectively apprised of his rights." *Id.* The judiciary gives effect to these protections by holding inadmissible at trial statements a defendant made during a custodial interrogation prior to being apprised of his or her *Miranda* rights. *Id.* at 492.

Morla seeks to suppress the statements he made to the officers while detained in the CBP office. There is no dispute that Morla made such statements prior to being informed of his *Miranda* rights. However, the Court is not required to suppress such statements unless, at the time the statements were made, Morla was subject to a custodial interrogation. *See, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (holding that statements the defendant sought to suppress were not made subject to a custodial interrogation and were therefore admissible at trial). The two elements of a custodial interrogation are, naturally: "(a) there must be an interrogation of the defendant, and (b) it must be while she is in 'custody.'" *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011).

The government does not dispute that the CBP officers interrogated Morla; it argues,

however, that Morla was not in custody while detained in the CBP office. Whether Morla was in custody for *Miranda* purposes depends on "whether a reasonable person in [Morla]'s position would have understood herself to be subjected to restraints comparable to those associated with a formal arrest." *Id.* at 153 (internal quotation marks and alterations omitted) (quoting *Georgison v. Donelli*, 588 F.3d 145, 155 (2d Cir. 2009)). This requires considering the totality of the circumstances surrounding the encounter with authorities, including: "its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion," and "especially so in border situations, the nature of the questions asked." *Id*. (citing *Yarborough v. Alvarado*, 541 U.S. 652, 661-63 (2004)).

Some of these factors weigh in favor of holding the interrogation was noncustodial. Morla was interrogated in a CBP office at the airport as Morla was attempting to leave the country. In the context of border crossings, "a reasonable traveler will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on." *Id.* at 153-54; *see also United States v. Soto*, 2014 WL 3695990, at *4 (E.D.N.Y. July 24, 2014) ("The Second Circuit in *FNU LNU* discussed this expectation of "constraints and questions" in the context of an individual *arriving* at a United States airport. However, a similar expectation attaches to

6

an individual *departing* from a United States airport as well."). Indeed, a person in Morla's position should have reasonably expected to be subject to inquiry from law enforcement officials, even in circumstances in which he or she was not "free to leave" and still not subject to formal arrest. *See FNU LNU*, 653 F.3d at 154; *United States v. Wilson*, 100 F. Supp. 3d 268, 279 (E.D.N.Y. 2015). Additionally, the questions asked of Morla were not out of the ordinary, and were the type customary in a routine border currency examination. *See FNU LNU*, 653 F.3d at 155 ("[A] reasonable person would recognize all [of the officer's] questions as relevant to her admissibility to the United States.").

Despite these heightened expectations of interactions with law enforcement at the airport, other factors militate a determination that Morla was in custody while being interrogated in the CBP office. After being removed from the plane and questioned in the jetway, CBP officers handcuffed Morla and transported him away from the terminal to a CBP office building. Once there, Morla was escorted by multiple officers to an office designated for suspect questioning. The officers seated Morla on a bench and handcuffed one of Morla's arms to it. Morla was then questioned further—with three CBP officers present in the room—and made the statements he now wishes to suppress.

"Handcuffs are generally recognized as a hallmark of a formal arrest." *United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) (citing *New York v. Quarles*, 467 U.S. 649, 655 (1984)). The government has not cited to—and the Court has not found—any case in which handcuffs were used in the present manner and the defendant was held not to be in

7

custody for *Miranda* purposes. *See FNU LNU*, 653 F.3d at 146-47 (denying suppression motion when no handcuffs were used); *United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (same).

Even the court in *Soto*—which the government argues is substantially similar to the present case—did not hold admissible certain statements given while the defendant was in handcuffs at a CBP office. To be sure, Soto was taken to a CBP office and handcuffed to a bench after being questioned in a jetway, but she did not move to suppress any statements made while in the CBP office, as Morla does here. *See generally Soto*, 2014 WL 3695990. The *Soto* court's *Miranda* analysis was limited to statements Soto made in the jetway, while she was not handcuffed. *See id.* at *3-6. Morla, on the other hand, does not challenge the admissibility of any statements he made in the jetway. Instead, his motion challenges the statements he made in the CBP office while handcuffed to the bench.

Under the totality of the circumstances, a reasonable person in Morla's position—i.e., handcuffed to a bench in the CBP office—would feel restrained in a manner comparable to a formal arrest. Therefore, the officers were required to advise Morla of his *Miranda* rights, and the statements Morla made in the CBP office are inadmissible.

## III

Morla's motion to suppress is GRANTED.

                                                             /s/ Frederic Block
                                                           FREDERIC BLOCK
                                                           Senior United States District Judge

Brooklyn, New York
February 12, 2015